**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| ARNO GRAVES, and | ) | |
| RON NASH, | ) | |
| | ) | |
| on behalf of themselves | ) | |
| and all others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: |
| | ) | |
| | ) | |
| SMITTY'S SUPPLY, INC., | ) | |
| CAM2 INTERNATIONAL, LLC, and | ) | |
| ATWOOD DISTRIBUTING, LP, | ) | |
| | ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

COME NOW Plaintiffs on behalf of themselves and all others similarly situated, and for their Class Action Complaint state and allege as follows:

## INTRODUCTION

1.      For years, Defendants have deceptively and misleadingly labeled, marketed and sold tractor hydraulic fluid as "303" fluid meeting "303" specifications when, in fact, the "303" designation is obsolete and 303 specifications have not been available for over forty (40) years. Defendants have also deceptively and misleadingly labeled, marketed and sold tractor hydraulic fluid as meeting certain manufacturer specifications and providing certain anti-wear and protective benefits when, in fact, Defendants knew, or should have known, the fluid they are selling does not meet all listed manufacturer specifications and does not contain the anti-wear and protective properties required in Tractor Hydraulic Fluid. Instead, the "303" fluid is a fluid mixed from line

wash and other lubricant products (including some used products) that are not suitable for use as ingredients in a tractor hydraulic fluid.

2.      Tractor Hydraulic Fluid (THF) is a multifunctional lubricant that has been manufactured for and used in tractors and equipment for over fifty (50) years.  It is designed to act as a hydraulic fluid, transmission fluid and gear oil for this equipment.  In the 1960s and early 1970s, John Deere (Deere) manufactured a popular and widely used THF called JD-303 or simply "303," and the term "303" became synonymous with the John Deere name and this high-quality and effective THF product.

3.      Sperm whale oil was an essential ingredient in Deere's 303 THF.  In the mid-1970s, the passage of laws protecting endangered species outlawed the use of sperm whale oil.   Deere's "303" formula could no longer be manufactured or sold, and because its essential ingredient—sperm whale oil—could no longer be used, the designation became obsolete and there are no specifications available for "303" tractor hydraulic fluids.  Deere was forced to manufacture a new tractor hydraulic fluid with different additives that would be both effective and affordable.

4.      After it stopped producing and selling its 303 THF, Deere manufactured and sold several THF products with certain ingredient, viscosity, anti-wear and detergent additive specifications, including initially offering J14B, J20A and J20B.  Many other manufacturers created and sold fluids that purported to be similar to these new products while others continued to offer a "303" product.  The J14B specification became obsolete in the late 1970s.  J20A and J20B were then offered and, during the time the J20A/B specifications were in use, Deere used a licensing program called Quatrol to police the quality of THF products in the marketplace.  The Quatrol program required blenders and sellers of competing THF products to submit test data to

2

Deere prior to the use of the J20A/B specification on their product labels, to ensure the products met the advertised specifications.

5.      In the late 1980s or early 1990s, Deere abandoned the J20A/B specification as well. John Deere then and now manufactures and sells THF meeting a specification called J20C or J20D (low viscosity).  The J20C fluid is sold under the name "Hy-Gard," and many other manufacturers market and sell products which they contend meet the J20C specification in order to compete with John Deere.  The following timeline illustrates the history of 303 THF:



TRACTOR HYDRAULIC FLUID (THF) TIMELINE
JOHN DEERE THF SPECIFICATIONS

| John Deere Specification | Comment | JD Issue Date |
| --- | --- | --- |
| JDM J20D³ | THF for cold climates | 1989 - Current |
| JDM J20C² | Primary THF specification | 1989 - Current |
| JDM J20B³ | DISCONTINUED – replaced by JDM J20D | 1978 - 1989 |
| JDM J20A² | DISCONTINUED – replaced by JDM J20C | 1978 - 1989 |
| JDM J14B | DISCONTINUED – replaced by JDM J20A/B | 1974 - 1978 |
| JDM J303¹ | DISCONTINUED – replaced by JDM J14B | 1960 - 1974 |

Footnotes:
1.  There are no specifications available for 303 Tractor Hydraulic Fluids and, as such, products making only "303" claims cannot be tested to assure compliance with any known specifications.
2.  Transmission/Hydraulic Fluid with Anti-Brake Chatter Properties (For Summer or warm weather climates)
3.  Low Viscosity Transmission/Hydraulic Fluid with Anti-Brake Chatter Properties (For Winter or cold weather climates)

6.      John Deere discontinued the Quatrol program around the time J20A was discontinued (approximately 1989). The subsequent lack of a quality control program or policing of the products in the market resulted in a "free for all" with respect to the THF manufactured and sold in the open market and the opportunity for unscrupulous manufacturers and sellers to falsely use the Deere specifications (and other manufacturers' specifications) on the labels of the THF products they sell.

3

7.      Defendants deceptively and illegally traded on the obsolete and non-existent "303" designation, the other obsolete J14B and J20A specifications, and the John Deere trade name that was and has continued to be so prevalent in the industry.  This was deceptive as there is no known "303" specification, and there is no way for manufacturers, sellers, or anyone else to truthfully claim the products meets or is in compliance with any such specification.  This was also deceptive because Defendants knew their 303 THF Products did not meet the J20A specification Defendants advertised on the label.

8.      Nonetheless, Defendants manufactured and sold their Cam2 Promax 303 Tractor Hydraulic Oil ("303 THF Product") as a lower cost alternative, and offer it for sale as an economically priced tractor hydraulic fluid that met or had an equivalency to many (or in some cases all) manufacturers' specifications, had effective lubricant and anti-wear additives and properties, and was safe for use in purchasers' equipment. The Cam2 Promax 303 Tractor Hydraulic Oil was the same fluid as Super S 303 Tractor Hydraulic Fluid, Super S Super Trac 303 Tractor Hydraulic Fluid, and Cam2 303 Tractor Hydraulic Oil, all also manufactured by Smitty's. Defendants sold their 303 THF Product with eye-catching photos of modern tractors and industrial equipment and in bright, yellow 5-gallon buckets.  By name dropping a list of equipment manufacturers, Defendants sought to create an impression of quality and take advantage of consumers' lack of understanding of the multitude of complex manufacturer specifications.

9.      In addition to deceptively promoting a designation that was obsolete, Defendants used poor quality base oils, waste oil, line flush, and used oils and diluted additive packages, if any, in their 303 THF Product in order to keep production costs down and increase profits.  As a result of the inferior ingredients and this "down-treating" of any additive packages, Defendants' 303 THF Product not only lacked the required lubricant and protective benefits offered to

4

purchasers, the fluids actually exposed purchasers' equipment to increased wear and risk of damage to the spiral gear, excessive wear in the planetaries, improper and poor shifting, seal leakage, and improper operation of the wet brakes. Despite use of these inferior ingredients and inadequate protective additives, the 303 THF Product was labeled and marketed to unsuspecting purchasers as meeting or having an equivalency to manufacturer specifications and providing certain benefits and anti-wear properties.

10.     In November 2017, because of the deceptive nature of the 303 THF Product, the failures of the 303 THF Product to meet any published specification, and the damage the products could cause to consumers' equipment, the State of Missouri's Department of Agriculture, Division of Weights and Measures, banned Defendants and all other manufacturers and sellers from offering these type of "303" tractor hydraulic fluid products for sale in Missouri.  The states of Georgia and North Carolina followed suit.

11.     Despite the ban of "303" THF in several states and the increased scrutiny on those products throughout the country, Defendants continued for some time to sell their 303 THF Product in all states where the fluid has not been banned.

12.     Defendants' conduct has harmed purchasers like Plaintiffs, who purchased Defendants' 303 THF Product that was offered and sold as an acceptable tractor hydraulic fluid that met or had an equivalency to certain manufacturer specifications, as a fluid that was safe for use in farm, construction and logging equipment, and as having certain characteristics and qualities that protected equipment from wear and damage.

13.     In reality, instead of receiving a product that was an acceptable tractor hydraulic fluid that met or had an equivalency to manufacturers' specifications, Plaintiffs and other purchasers received a 303 THF Product that, contrary to Defendants' labeling, had no known or

industry-approved specifications, had contents and additives that varied, were unknown, were obsolete, did not possess the claimed protective characteristics and/or did not meet one or more of the manufacturers' specifications on these products. These products therefore exposed purchasers' equipment to harm, increased wear and damage, and caused purchasers to overpay for a product that was worthless and/or worth much less than the sale price.

14. In late 2017, around the time of the stop sale order and ban of 303 THF in Missouri and other states, Defendant Smitty's modified the label of its Cam2 ProMax 303 Tractor Hydraulic Oil, changing the name to "Cam 2 303 Tractor Hydraulic Oil." Because the photos of the equipment on the labels were deceptive and misleading, Smitty's removed the pictures of the modern equipment and replaced those pictures with images of older, simpler tractors on the front of the label.

15. At that time, however, no others changes were made to the labels despite the fact that management employees at Smitty's knew of the deceptive and misleading representations about the physical and performance properties of the fluid, the representations about the testing that was purportedly performed on the fluid, and the list of equipment manufacturers' names contained on the Cam 2 303 label. Incredibly, Smitty's continued to sell its 303 THF Products in in all states in which it had not been banned, with those misrepresentations knowingly being made to purchasers like Plaintiffs.

16. Like many other consumers throughout Missouri and the country, Plaintiffs purchased Defendants' 303 THF Product in Missouri and suffered damage as a result.

17. In November 2017, in connection with its issuance of stop sale order and the ban on 303 THF Products, the State of Missouri's Department of Agriculture, Division of Weights and Measures, stated publicly that it had performed testing on the 303 THF Products and that the testing

revealed that the products did not meet any manufacturers' current tractor hydraulic fluid specifications and were underperforming to the point damage was likely to result from use.

18.     Until the State of Missouri's public disclosures in November 2017, neither Defendants' misrepresentations, omissions, nor the fact of injury to Plaintiffs and the Class, were reasonably ascertainable.  Defendants concealed any internal test data and the truth about the 303 THF products at all relevant times during the class period.

## PARTIES

19.     Plaintiff Arno Graves is a citizen and resident of Ottawa County, Oklahoma.

20.     Plaintiff Ron Nash is a citizen and resident of Cherokee County, Kansas.

21.     Defendant Smitty's Supply, Inc.  is a for-profit company incorporated in Louisiana and with its principal place of business in Roseland, Louisiana.  Defendant Smitty's Supply, Inc. owns Cam2 International, L.L.C., and so the companies together will be referred to herein as "Smitty's."  Smitty's has advertised and sold its products, including its Cam2 Promax 303 Tractor Hydraulic Oil, throughout the state of Missouri at various retail stores, including those owned and operated by Atwood Distributing, LP.

22.     Defendant Cam2 International, L.L.C. ("Cam2") is a for-profit company incorporated in Louisiana and with its principal place of business in Roseland, Louisiana.  Cam2 has advertised and sold its products, including its Cam2 Promax 303 Tractor Hydraulic Oil, throughout the state of Missouri at various retail stores, including those owned and operated by Atwood Distributing, LP.

23.     Defendant Atwood Distributing, LP ("Atwoods") is a limited partnership organized and existing under the laws of the state of Oklahoma and with its principal place of business in Enid, Oklahoma.  Defendant Atwoods has advertised and sold its products throughout the state of

Missouri and the United States at its Atwoods Ranch and Home retail stores, including in Webb City, Missouri.

24.    Defendants' conduct has harmed purchasers like Plaintiffs by inducing them to purchase and use Defendants' 303 THF Product through the false promise that the 303 THF Product met or had an equivalency to certain specifications (including JD-303 and J20A) and by directly or implicitly representing that the product was safe for use in farm, construction and logging equipment and had certain characteristics and qualities that protected equipment from wear and damage when, in reality, the product did not meet any specifications and caused harm, increased wear and damage to Plaintiffs' equipment.

## JURISDICTION AND VENUE

25.    This action is filed in United States District Court for the Western District of Missouri, which is an appropriate venue because the false representations, deceptive, dishonest, and misleading practices and the unjust enrichment occurred in Missouri and elsewhere.

26.    The United States District Court for the Western District of Missouri has personal jurisdiction over Defendants because Defendants transact business in Missouri, through their various advertising methods and product sales directed toward Missouri residents.  Additionally, Plaintiffs purchased the products at issue in Missouri.

27.    Federal jurisdiction is appropriate under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d).

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

8

28.     Defendant Atwoods is in the business of selling and advertising for sale certain merchandise or retail products in trade or commerce at retail stores within the state of Missouri and throughout the United States.

29.     Defendant Smitty's (which as set forth above, includes Cam2) is in the business of manufacturing certain merchandise or retail products which are to be sold in trade or commerce at retail stores within the state of Missouri and throughout the United States.

30.     Defendant Cam 2 is in the business of manufacturing certain merchandise or retail products which are to be sold in trade or commerce at retail stores within the state of Missouri and throughout the United States.

31.     During some or all of the time period from 2013 to present, Defendant Atwoods and other Missouri retailers sold and advertised in yellow buckets a 303 THF Product called Cam2 Promax 303 Tractor Hydraulic Oil.

32.     During some or all of the time period from 2013 to the present, Defendants Smitty's and Cam2 manufactured and advertised the Cam2 Promax 303 Tractor Hydraulic Oil which was sold by Atwoods and other retailers.

**Defendants' Deceptive Labeling, Marketing and Advertising**

33.     During some or all of the time from 2013 to the present, Defendants offered the 303 THF Product for sale at stores all over Missouri as a product suitable for use as a tractor hydraulic fluid and as a fluid that provided certain performance benefits and met or had equivalency to a wide number of manufacturers' specifications.  The average sale price for a five (5) gallon bucket of Defendants' 303 THF Product was generally between $20.00 and $25.00.

34.     Defendants falsely and deceptively labeled, marketed and offered for sale the 303 THF Product (1) as meeting manufacturer specifications and being acceptable for use as hydraulic

9

fluid, transmission fluid, and gear oil in older tractors and other equipment; (2) as a substitute for and satisfying John Deere's JD-303 and J20A specifications; (3) as a fluid that provides extreme pressure and anti-wear protection for tractor transmission, axles and hydraulic pumps; (4) as a fluid that protects against rust and corrosion; and (5) as a fluid designed for use in equipment manufactured by Allis-Chalmers, Massey Ferguson, Deutz, JI Case/David Brown, Allison, International Harvester, White, Kubota, John Deere, Oliver, Ford and Caterpillar.

35.     Defendants' labeling, marketing, advertising and sale of the 303 THF Product was widespread, continuous and contained on various signs, labels and advertisements throughout Missouri for years.

36.     Up until late 2017 or early 2018, Defendants' Cam2 ProMax 303 Tractor Hydraulic Oil was specifically labeled, marketed and advertised as follows:



37.     These representations were also contained in Defendants' advertising circulars and/or on Defendants' websites, such as the following:



**PROMAX™ 303 Tractor Hydraulic Oil**

CAM2 PROMAX™ TRACTOR HYDRAULIC 303 OIL is general-purpose lubricant for farm and industrial tractors and construction equipment. CAM2 PROMAX™ Tractor Hydraulic 303 Oil provides performance in the areas of anti-wear, PTO clutch, rust protection, extreme pressure properties, water sensitivity, foam suppression and brake chatter reduction. CAM2 PROMAX™ Tractor Hydraulic 303 Oil is recommended for ambient temperatures between +32°F and 104°F (0°C to 40°C). For ambient temperatures outside this range or where a premium tractor hydraulic/transmission oil is required, please use a CAM2 Premium Tractor Hydraulic Fluid. CAM2 PROMAX™ Tractor Hydraulic 303 Fluid is suitable as a replacement for the following manufacturers where a tractor hydraulic fluid of this performance level is recommended:

Allis Chalmers®  Ford® Tractor  Kubota®
Allison®  International Harvester®  Massey Ferguson®
Caterpillar®  JI Case®/David Brown®  Oliver®
Deutz®  John Deere® 303, J20A  White®

If application may cause severe performance problems, CAM2 PROMAX™ Tractor Hydraulic 303 fluid has not been recommended by any OEM for model years later than 1974. For equipment built after 1974 requiring multi-functional fluid, use a CAM2 Premium Tractor Hydraulic Fluid.

| | |
|---|---|
| 3/1 GAL | 80565-16731 |
| 3/2 GAL | 80565-16732 |
| 5 GAL | 80565-16705 |
| 55 GAL | 80565-16755 |
| BULK | 80565-16711 |

38.    Defendants' labeling thus specifically represented that the 303 THF Product being sold was acceptable for use and was:

- Field Tested

- Suitable as a replacement fluid for the following manufacturers where a tractor hydraulic fluid of this quality if recommended:  Allis Chalmers, Allison, Caterpillar, Deutz, Ford Tractor, International Harvester, JI Case/David Brown, John Deere 303, Kubota, Massey Ferguson, Oliver, White

- Providing excellent results in the areas of:
    1. Anti-wear properties
    2. Brake Chatter
    3. Extreme Pressure Properties
    4. Foam Suppression
    5. PTO Clutch Performance
    6. Rust Protection
    7. Water Sensitivity

39.    By naming, labeling, marketing, advertising and selling the 303 THF Product in the foregoing manner, and by describing the product using words such as "303" and "multi-functional," Defendants sought to create, and did create, an image of the 303 THF Product in the

11

minds of Plaintiffs and other purchasers that would lead a reasonable purchaser to conclude that Defendants' 303 THF Product was completely safe and effective for use in their equipment and in all equipment made by the listed manufacturers.

40. Defendants' THF Product's name, labeling, advertising and marketing of their 303 THF Product was material to the reasonable purchaser.

41. At the time of Defendants' labeling, advertisements, marketing and other representations, and as Defendants already knew or should have known, the representations regarding 303 THF Product were false, deceptive and misleading to consumers and others seeking to purchase tractor hydraulic fluid.

42. The John Deere "303" designation is over 50 years old and has been obsolete for many years. Certain ingredients of the original John Deere 303 fluid—such as sperm whale oil— have been banned since the 1970s and are no longer available for use. As a result, manufacturers have been unable to make and sell true "303" fluid for over forty (40) years and there are no longer any specifications for 303 fluid. Defendants knew or should have known that at the time they were marketing and selling the 303 THF Product during the Class Period, there were no specifications available for "303" tractor hydraulic fluid and, therefore, claims that the 303 THF Product met "303" specifications could not possibly be true, and Defendants had no way to ensure the accuracy of representations that their 303 THF Product was in compliance with any known specifications and in fact knew their 303 THF Product did not meet the J20A specifications.

43. As Defendants knew, or should have known, the 303 THF Product manufactured by Defendants and sold in the yellow buckets lacked some or all of the additives required to provide the advertised "results," "features" and "benefits."

12

44. As Defendants knew, or should have known, the 303 THF Product manufactured by Defendants and sold in the yellow buckets were made using flush oil, line wash or other waste oil products containing motor oil components and other additives that are never appropriate for use in a tractor hydraulic fluid.

45. As Defendants knew, or should have known, the 303 THF Product manufactured by Defendants and sold in the yellow buckets did not meet or have an equivalency to all current specifications (and failed to meet certain obsolete specifications) for any manufacturers of farm, logging and construction equipment. Alternatively, Defendants knew, or should have known, they had no basis on which to sell the 303 THF Product as a tractor hydraulic fluid that met or had an equivalency to the specifications of all manufacturers listed on the label because, on information and belief, either 1) Defendants' test data showed the viscosity, pour point and additive levels of the 303 THF Product varied, was inconsistent, and did not meet some or all of the specifications of the manufacturers listed on the labels; or 2) Defendants did not have any test data to confirm the 303 THF Product always had the viscosity, pour point or additive levels that met all manufacturers' specifications or that were needed for a fluid suitable for use in purchasers' equipment.

46. At no point in time, on the label of the 303 THF Product or otherwise, did Defendants tell purchasers the truth, including that:

    a. The "303" specification does not exist, is obsolete, could not be tested, and true 303 fluid was banned in the 1970s;

    b. Defendants used low quality base oil, flush oil, line wash, used transformer oil, used turbine oil or other reclaimed oil in the 303 THF Product, all of which are

unfit for use in hydraulic systems and should never be contained in a tractor hydraulic fluid;

c. The 303 THF Product contained a "down-treated" and/or no additive package;

d. Defendants' test data did not confirm that the 303 THF Product met all manufacturers' specifications, including the advertised J20A specification;

e. Defendants have no idea whether the 303 THF Product they offered for sale met the requirements of, has acceptable anti-wear properties, or is suitable for use in tractors or other equipment; and

f. The 303 THF Product may expose purchasers' equipment to increased wear and damage.

47. Instead, the 303 THF Product was deceptively offered for sale as a fluid containing quality base oils, sufficient additives, and meeting or having equivalency to the obsolete J20A specification, the long-defunct and now non-existent "303" specification and many other equipment manufacturer specifications.

### The State of Missouri's Testing of 303 THF

48. Because of the poor, uncertain quality of 303 tractor hydraulic fluids and the deceptive way in which they are manufactured and sold, several private and governmental entities have been concerned about the sale of the fluids, the misleading nature of the labeling, and the damage the fluids can do to tractors and other equipment. The Missouri Department of Agriculture (MDA) is one such entity.

49. In the summer of 2017, the MDA sampled fourteen (14) different 303 THF products, many of which claimed to meet manufacturers' specifications and claimed to work in

almost every tractor. Defendants' 303 THF Product Cam2 Promax 303 was purchased in Missouri by the MDA in 2017 and was one of the products tested.

50.     The MDA tested the fluids' viscosity, pour point, and additive and detergent levels to determine whether those levels met any current industry tractor hydraulic fluid specifications, namely, John Deere's J20C specifications.

51.     As a result of the testing, the MDA concluded that all fourteen (14) of these 303 THF products failed to meet any current specifications and were found to be underperforming to the point that damage was likely to result from use.

52.     Defendants' 303 THF Product was one of the fluids that failed to meet current specifications. More specifically, Defendants' Cam2 Promax 303 THF Product has a viscosity (Kinematic Viscosity @ 100C) level of 7.633. The J20C and J20A specifications for KV@100C requires a minimum of 9.1 and therefore Defendants' 303 THF Product fell short of the standard.

53.     Defendants 303 THF Product was also found to have additive levels of calcium, phosphorous and zinc that were well below (50% or more less than) the additive levels found in fluids meeting the J20C specification.

54.     Furthermore, Defendants' 303 THF Product's Kinematic Viscosity @ 100C level did not meet many or all of the specifications of the other manufacturers Defendants list on the labels and advertising of their 303 THF Product, including the J20A specification.

55.     The MDA's tests also indicated that Defendants' THF Product used waste, or "line flush" oil, which contain ingredients inappropriate for use in a tractor hydraulic fluid.

56.     In or around November 2017, the MDA notified Defendants, by letter, of their findings regarding the 303 THF products in the marketplace. The MDA notified Defendants they felt the 303 THF Product was mislabeled, misbranded, and that the labels were deceptive and

15

misleading and that the product was exposing equipment to increased wear and damage. As a result, the MDA ordered Defendants to stop selling their 303 THF Product in Missouri.

57.     Defendants' misrepresentations and omissions, and the fact of injury to Plaintiffs and the Class, were not reasonably ascertainable until the State of Missouri's disclosures and actions in November 2017.  Defendants concealed any internal test data and the truth about the 303 THF Product at all relevant times during the class period.

### Defendants Continue to Sell the Deceptive, Poor Quality 303 THF Products

58.     Despite receipt of the MDA's stop sale notices, test results and concerns regarding the damage that was being caused to equipment, Defendants continued to manufacture and sell the product in stated that had not banned the product.  Defendants did not in any way change the formula of the 303 THF Product after the State of Missouri's ban.

59.     Rather than pull the 303 THF Product off the market in all states, Defendants decided to continue to sell the 303 THF Product.  They made one change: the colorful photos of modern tractors were removed from the labels and were replaced with older, simpler tractors. However, in all other respects, the product was the same, and the labels continued to deceptively list the "303" designation, the equipment manufacturers' names, and the false and misleading claims of field testing and performance results.

60.     Despite the MDA findings, Defendants continued to sell the 303 THF Product and make those representations about the quality and performance properties of the product even though they knew the product did not meet or have an equivalency to any manufacturer specifications and that they did not have any data or evidence on which to base or substantiate the performance qualities represented on the label.

61.     Smitty's had no support for its claims of performance, yet  Defendants continued to sell the product to purchasers throughout the United States as a fluid recommended for use in almost all manufacturers' equipment, with representations of excellent performance in the areas of anti-wear properties, brake chatter, extreme pressure properties, foam suppression, PTO clutch performance, rust protection and water sensitivity.

62.     In 2018, in stark contrast to the quality represented to purchasers Smitty's knew that the Cam2 ProMax 303 Tractor Hydraulic Oil did not provide adequate wear protection and that its product could lead to excess deposit buildup inside transmissions and other parts of equipment.

63.     Defendants did not take any action to inform purchasers of the State of Missouri's testing and findings concerning Defendants' 303 THF Products.

### Plaintiffs' Experience with Defendants' Labeling and Products

64.     Plaintiffs each purchased Defendants' 303 THF Product on numerous occasions.

65.     As with all Members of the Class, in the period prior to the filing of this Class Action, Plaintiffs purchased Defendants' 303 THF Product containing the label representations set forth above.

66.     Plaintiff Arno Graves purchased Defendants' 303 THF Product.  On several occasions in the time period of 2013 through 2017, Plaintiff Graves purchased 5-gallon buckets of the Cam2 ProMax 303 Tractor Hydraulic Oil Product at the Atwoods retail store located in Webb City, Missouri and at the Tiff Store in Tiff City, Missouri.  Plaintiff paid an average price of $25 for each bucket.

67.     The 303 THF Product was used by Plaintiff Graves in his John Deere 2030, Case 480E Backhoe, and 1066 International Farmall tractor.

68.     Plaintiff Ron Nash purchased Defendants' 303 THF Product.  On several occasions in the time period of 2013 through 2017, Plaintiff Nash purchased 5-gallon buckets of the Cam2 ProMax 303 Tractor Hydraulic Oil Product at the Atwoods retail store located in Webb City, Missouri.  Plaintiff paid an average price of $25 for each bucket.

69.     The 303 THF Product was used by Plaintiff Nash in his International Harvester Backhoe, International Farmall Tractor, Allis Chalmers Backhoe, and other equipment.

70.     As a result of Defendants' manufacturing and offering the 303 THF Product for sale, Plaintiffs purchased a tractor hydraulic fluid that was falsely and deceptively offered for sale as a "303" fluid that contained quality base oils and additives, met or had an equivalency to required specifications and was safe for use in equipment when, in reality, the fluid offered was of uncertain quality, lacked adequate viscosity and additives, contained line wash or flush oil, had a value much less than the price offered for sale, and was likely to expose equipment to increased risk of wear and damage.

71.     Plaintiffs reasonably relied upon Defendants' representation that the fluid was a "303" fluid and Defendants' own labeling, statements and advertisements concerning the particular qualities and benefits of the 303 THF Products.

72.     All reasonable purchasers would consider based on the label that Defendants' 303 THF Product was suitable for use in tractors and other equipment and would not have any understanding or way to know that Defendants' 303 THF Product was of uncertain quality, lacked adequate viscosity and additives, contained line wash or flush oil, had a value much less than the price offered for sale, and/or that use of Defendants' 303 THF Product would expose all equipment to increased wear and damage.

18

73.     A reasonable purchaser would consider Defendants' labeling, statements and advertisements when looking to purchase a tractor hydraulic fluid. As a result of using Defendants' 303 THF Product, Plaintiffs and Class Members: (a) paid a sum of money for a product that was not as represented; (b) received a lesser product than labeled, advertised and marketed; (c) were deprived of the benefit of the bargain because the 303 THF Product was different than what Defendants represented; (d) were deprived of the benefit of the bargain because the 303 THF Product had less value than what was represented; (e) did not receive a product that measured up to their expectations as created by Defendants; and/or (f) suffered increased and excessive wear and/or damage to their equipment, including damage to gears, seals and hydraulic systems.

74.     When Defendants manufactured, named, labeled, marketed, advertised, distributed, and sold Plaintiffs and Class Members their 303 THF Product, Defendants knew or should have known that product (1) did not meet or have an equivalency to manufacturer specifications and was not acceptable for use as hydraulic fluid, transmission fluid, and gear oil in older tractors and other equipment; (2) was not an adequate substitute for and did not satisfy John Deere's JD-303 or J20A specifications; (3) was not adequate to provide extreme pressure and anti-wear protection for tractor transmission, axles and hydraulic pumps; (4) was not adequate to protect against rust and corrosion; and (5) was not appropriate for use in equipment of manufacturers including Allis-Chalmers, Massey Ferguson, Deutz, JI Case/David Brown, Allison, International Harvester, White, Kubota, John Deere 303, J20A, Oliver, Ford and Caterpillar.

75.     Plaintiffs used the 303 THF Product in the manner in which Defendants advised it could and should be used.

76.     As a result of Defendants' 303 THF Product not meeting or being equivalent to specifications as labeled, advertised, marketed, warranted, and promised, Defendants violated

19

consumer protection acts, breached express and implied warranties, fraudulently or negligently induced Plaintiffs and Class Members to purchase their products through material misrepresentations, acted in a negligent manner, and were unjustly enriched.

77. Defendants' manufacture, labeling, and sale of the 303 THF Product was deceptive and misleading in at least the following respects:

      (a) Defendants' use of "303" in the name of the product was deceptive and misleading. The 303 THF Product did not use John Deere 303's formula and would not meet the specifications for John Deere 303. Defendants packaged their 303 THF Product in the yellow bucket with illustrations of modern tractors and equipment so as to further deceive and mislead and create the impression that the 303 THF Product was a legitimate tractor hydraulic fluid that met the specifications for John Deere 303 and other John Deere equipment.

      (b) Defendants placed a deceptive and misleading statement on the product labels by claiming that John Deere 303 is one of the specifications for which the 303 THF Product was "[s]uitable as a replacement fluid for the following manufacturers where a tractor hydraulic fluid of this quality is recommended."

      (c) Defendants placed a deceptive and misleading statement on the product labels by claiming that J20A is one of the specifications for which the 303 THF Product was "[s]uitable as a replacement fluid for the following manufacturers where a tractor hydraulic fluid of this quality is recommended."

      (d) Defendants placed a deceptive and misleading statement on the product labels by listing eleven (11) other manufacturers as those for which the 303 THF Product was "[s]uitable as a replacement fluid for the following manufacturers

20

where a tractor hydraulic fluid of this quality is recommended," without specifying the equipment/specifications purportedly met for each of those eleven (11) manufacturers.

(e) Defendants engaged in deceptive and misleading conduct in failing to provide an adequate notice, disclaimer, or warning on the labels.

(f) Defendants placed a deceptive and misleading statement on the product labels by listing manufacturers of equipment in which the 303 THF Product purportedly may be used, when in reality the product did not meet many of the specifications for the listed manufacturers' modern or older model equipment.

(g) Defendants made a deceptive and misleading statement on the product labels by representing that the product had been field tested.

(h) Defendants made a deceptive and misleading statement on the product labels when claiming that the 303 THF Product "will provide excellent results in the areas of:

- Anti-wear properties
- Brake Chatter
- Extreme Pressure Properties
- Foam Suppression
- PTO Clutch Performance
- Rust Protection
- Water Sensitivity"

(i) Defendants engaged in misleading and deceptive conduct with regard to their 303 THF Product in failing to disclose that the product contained flush oil, line flush, waste oil and/or contained other materials that should never be contained in tractor hydraulic fluid.

21

78.     The conduct listed in paragraph 77(a)-(i) constitutes deceptive and unconscionable business practices in violation of consumer protection laws.

79.     Defendants concealed any internal test data and the truth about the 303 THF Product at all relevant times during the class period. Accordingly, Defendants' misrepresentations and omissions, and the fact of injury to Plaintiffs and the Class, were not reasonably ascertainable until—at the earliest—the State of Missouri's public disclosures in November 2017.

80.     This action is brought by Plaintiffs against Defendants to recover all money paid by Plaintiffs and Class Members to Defendants for purchase of their 303 THF Product which was labeled, marketed, advertised, and sold in the dishonest, misleading, and deceptive manners noted herein, for recovery of the damage caused to equipment owned by Plaintiffs and the Class Members, for punitive damages, attorneys' fees, costs, and for all other remedies available to those aggrieved by Defendants' conduct.

## CLASS ACTION ALLEGATIONS

81.     Plaintiffs bring this Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and the following Class of similarly situated persons:

> All persons and other entities who purchased Cam2 ProMax 303 Tractor Hydraulic Oil in Missouri at any point in time from December 1, 2013 to present, excluding those who purchased for resale.

82.     Also excluded from the Class are Defendants, including any parent, subsidiary, affiliate or controlled person of Defendants; Defendants' officers, directors, agents, employees and their immediate family members, as well as the judicial officers assigned to this litigation and members of their staffs and immediate families.

83. The 303 THF Product at issue was sold across Missouri and the United States through retailers. The Class Members may be identified through use of sales receipts, affidavits, or through sales records.

84. The proposed Class is so numerous that joinder of all Class Members is impracticable. Although the exact number and identity of each Class Member is not known at this time, there are thousands of Members of the Class.

85. There are questions of fact and law common to the Class which predominate over questions affecting only individual Class Members. The questions of law and fact common to each Class arising from Defendants' actions include, without limitation, the following:

    a. The components and qualities of Defendants' 303 THF Product, and the cost to Defendants to manufacture, distribute, market and sell their 303 THF Product;

    b. Whether Defendants were unjustly enriched;

    c. Whether Defendants were negligent;

    d. Whether Defendants breached the express warranties provided with regard to the 303 THF Product;

    e. Whether Defendants breached the implied warranty of merchantability with regard to the 303 THF Product;

    f. Whether Defendants breached the implied warranty of fitness for particular purpose with regard to the 303 THF Product;

    g. Whether Defendants deliberately failed to disclose material facts to consumers regarding the quality of the 303 THF Product and the obsolete nature of the products and the specifications the products claimed to meet;

    h. Whether Defendants' manufacturing, labeling, advertising, marketing, and/or sale of their 303 THF Product was deceptive, unfair, and/or dishonest as alleged in paragraphs 7-9, 11-15, 33-47, 58-63, 70, 72-74, and 76-79, above;

i. Whether Defendants' 303 THF Product was being labeled, advertised and marketed as alleged in paragraphs 7-9, 11-15, 33-47, 58-63, 70, 72-74, and 76-79, above;

j. Whether Defendants' 303 THF Product in actuality was as alleged in paragraphs 10-15, 17-18, 41-63, 70, 72-74, and 76-79, above;

k. Whether Defendants studied or tested their labeling and the effect of the labeling on consumers' perceptions, and whether Defendants studied the susceptibility of consumers who might purchase tractor hydraulic fluid;

l. Whether Defendants' representations regarding their 303 THF Product were false and made knowingly by Defendants;

m. Whether Defendants' representations were false and made negligently by Defendants; and,

n. Whether use of the 303 THF Product caused and/or exposed equipment to damage.

86. The claims of each representative Plaintiff are typical of those in the putative Class because each purchased Defendants' 303 THF Product and was similarly treated.

87. Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of other Members of the Class. The interests of the other Class Members will be fairly and adequately protected by Plaintiffs and counsel, who have extensive experience prosecuting complex litigation and class actions.

88. A Class Action is the appropriate method for the fair and efficient adjudication of this controversy. It would be impracticable, cost prohibitive, and undesirable for each Member of the Class to bring a separate action. In addition, the presentation of separate actions by individual Class Members creates the risk of inconsistent and varying adjudications, establishes incompatible standards of conduct for Defendants, and/or substantially impairs or impedes the ability of Class Members to protect their interests. A single Class Action can determine, with judicial economy, the rights of the Members of the Class.

89.     A Class Action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of this controversy.

90.     Class certification is also appropriate because Defendants have acted or refused to act on grounds generally applicable to the Class. The Class Action is based on Defendants' acts and omissions with respect to the Class as a whole, not on facts or law applicable only to the representative Plaintiffs.  All Class Members who purchased Defendants' products were treated similarly.  Thus, all Class Members have the same legal right and interest in relief for damages associated with the violations enumerated herein.

91.     Class certification is also appropriate for class-wide injunctive relief pursuant to Rule 23(b)(2).

92.     Plaintiffs assert in Counts I through VIII, below, the following claims on behalf of themselves and the Class:

- Count I – Negligence

- Count II – Breach of Express Warranty

- Count III – Breach of Implied Warranty of Merchantability

- Count IV – Breach of Implied Warranty of Fitness for Particular Purpose

- Count V – Unjust Enrichment

- Count VI – Fraud/Misrepresentation

- Count VII – Negligent Misrepresentation

- Count VIII – Missouri Merchandising Practices Act Violations

## COUNT I
### (Negligence)

93.     Plaintiffs incorporate by reference all preceding paragraphs of this Class Action

Complaint as if fully set forth herein.

94. Defendants owed a duty of at least reasonable care to the purchasers of their 303 THF Product, including a duty to use reasonable care in the manufacture, sampling, testing, labeling and marketing of the finished 303 THF Product.

95. Defendants breached this duty by the acts and omissions alleged herein, including but not limited to:

    a. Distributing and using misleading labeling information regarding the 303 THF Product qualities and OEM specifications met by product;

    b. Failing to adequately warn and instruct purchasers about the true nature of the 303 THF Product and potential harm to equipment caused by use of the 303 THF Product in equipment for which it does not meet specifications;

    c. Failing to adequately ensure the 303 THF Product manufactured and sold met or had an equivalency to the advertised specifications;

    d. Failing to utilize adequate testing and other controls to ensure the 303 THF Product met the advertised specifications; and,

    e. Instituting and/or allowing careless and ineffective product manufacturing protocols.

96. As a result of Defendants' negligence, Defendants' 303 THF Product had contents and additives that varied, were unknown, were obsolete, did not possess the claimed protective characteristics and/or did not meet one or more of the manufacturers' specifications.

97. Defendants' negligence caused or contributed to cause injuries and damages to Plaintiffs and the Class Members and caused Plaintiffs' and the Class Members' equipment to suffer harm and damage, including wear, damage and leakage in the seals, exposure to damage in

the spiral gear in the drive, improper and poor shifting, wear and damage to the wet brakes, high pump leakage, and damage from deposits, sludging and thickening. Defendants' negligence also caused or contributed to cause Plaintiffs and the Class Members to overpay for a product that was worthless and/or worth much less than the sale price.

98.     Defendants concealed any internal test data and the truth about the 303 THF products at all relevant times during the class period. Accordingly, Defendants' misrepresentations and omissions, and the fact of injury to Plaintiffs and the Class, were not reasonably ascertainable until—at the earliest—the State of Missouri's public disclosures in November 2017.

99.     Plaintiffs and Class Members are thus entitled to an award of compensatory damages, prejudgment interest and post-judgment interest.

100.     Defendants' conduct was grossly negligent and showed a complete indifference to or conscious disregard of the rights of others, including Plaintiffs and Class Members, such that punitive damages are thus warranted.

<u>**COUNT II**</u>
**(Breach of Express Warranty)**

101.     Plaintiffs incorporate by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

102.     Plaintiffs and Class Members purchased Defendants' 303 THF Product.

103.     As set forth above, Defendants made common statements of facts regarding quality and use in the name and on the label of the 303 THF Product.

104.     The common statements Defendants made in the name and on the label of the 303 THF Product were made to induce Plaintiffs and Class Members to purchase the 303 THF Product and/or were a material factor in inducing Plaintiffs and Class Members to purchase the 303 THF

Product, and therefore became part of the basis of the benefit of the bargain and an express warranty.

105. As set forth above, the THF 303 Product did not conform to the statements of Defendants. As a result, Plaintiffs and the Class Members did not receive goods as warranted by Defendants.

106. Defendants have received from Plaintiffs timely notification of the defects in their THF 303 Product.

107. The failure of the THF 303 Product to conform to the statements of Defendants has caused injury and damage to Plaintiffs and Class Members.

## COUNT III
### (Breach of Implied Warranty of Merchantability)

108. Plaintiffs incorporate by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

109. Defendants directly or indirectly sold the 303 THF Product to Plaintiffs and Class Members for use as described above.

110. As set forth above, at the time Defendants sold the 303 THF Product, the products were not fit for their ordinary use and the use described by Defendants.

111. Plaintiffs and Class Members used the 303 THF Product for their ordinary purpose and the use described by Defendants.

112. Defendants have received from Plaintiffs timely notification of the defects in their 303 THF Product.

113. The failure of the 303 THF Product to be fit for their ordinary purpose has cause injury and damage to Plaintiffs and Class Members.

28

## COUNT IV
### (Breach of Implied Warranty of Fitness for Particular Purpose)

114.    Plaintiffs incorporate by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

115.    Defendants directly or indirectly sold the 303 THF Product to Plaintiffs and Class Members for use as described above.

116.    As set forth above, at the time Defendants sold the 303 THF Product, the product was not fit for their particular purpose for use as universal hydraulic fluid for tractors and/or other equipment.

117.    Defendants knew or should have known of the uses for which the 303 THF Product were purchased.

118.    Plaintiffs and Class Members reasonably relied upon Defendants' judgment that the 303 THF Product was fit for use as universal hydraulic fluid for tractors and/or other equipment.

119.    Defendants have received from Plaintiffs timely notification of the defects in their 303 THF Product.

120.    The failure of the 303 THF Product to be fit for their particular purpose has caused injury and damage to Plaintiffs and Class Members.

## COUNT V
### (Unjust Enrichment)

121.    Plaintiffs incorporate by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

122.    As a result of Defendants' deceptive, fraudulent, and misleading naming, labeling, advertising, marketing, and sales of the 303 THF Product, Plaintiffs and the Class Members

29

purchased Defendants' 303 THF Product and conferred a benefit upon Defendants by purchasing obsolete and harmful tractor hydraulic fluid, which benefit Defendants appreciated and accepted.

123.    Those benefits were obtained by Defendants under false pretenses because of Defendants' concealments, misrepresentations, and other deceptive, misleading, and unfair conduct relating to the 303 THF Product.

124.    Defendants were enriched at the expense of Plaintiffs and other Class Members through the payment of the purchase price for Defendants' 303 THF Product.

125.    As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and Class Members have suffered damages in an amount to be determined at trial.

126.    Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiffs and the other Class Members, in light of the fact that the 303 THF Product purchased by Plaintiff and the other Members of the Class was not what Defendants represented them to be.  Thus, it would be inequitable or unjust for Defendants to retain the benefit without restitution to Plaintiffs and the other Members of the Class for the monies paid to Defendants for the 303 THF Product.

127.    By reason of the foregoing, Defendants should be required to account for and disgorge all monies, profits, and gains which they have obtained at the expense of Plaintiffs and Class Members.

**COUNT VI**
**(Fraudulent Misrepresentation)**

128.    Plaintiffs incorporate by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

30

129.    Defendants made representations regarding their 303 THF Product, as set forth above, including without limitation the representations that the 303 THF Product was fit to be used in older tractors and other equipment, that the 303 THF Product met or had an equivalency to specifications, and that the 303 THF Products provided certain qualities, results and benefits.

130.    Defendants' representations set forth above, including without limitation the representations that the 303 THF Product was fit to be used in older tractors and other equipment, that the 303 THF Product met or had an equivalency to specifications, that the 303 THF Product provided certain qualities, results and benefits, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were false and made knowingly by Defendants, and were therefore fraudulent.

131.    Defendants' representations as set forth above, including without limitation the representations that the 303 THF Product was fit to be used in older tractors and other equipment, and that the 303 THF Product met or had an equivalency to specifications, that the 303 THF Product provided certain qualities, results and benefits, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were made by each Defendant with the intent that Plaintiffs and other Class Members rely on such representations.

132.    Defendants' representations as set forth above, including without limitation the representations that the 303 THF Product was fit to be used in older tractors and other equipment, that the 303 THF Product met or had an equivalency to specifications, that the 303 THF Product provided certain qualities, results and benefits, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, were made by each Defendant despite knowing the representations were false at the time the representations were made, and/or without knowledge of the truth or falsity of the representations.

31

133.    Defendants' representations were material to the purchase of the 303 THF Product.

134.    Plaintiffs and Class Members relied on Defendants' representations, and such reliance was reasonable under the circumstances.

135.    Defendants' conduct as set forth herein with regard to the name, labeling, marketing and sale of the 303 THF Product constitutes fraud on Plaintiffs and all Class Members.

136.    Plaintiffs and Class Members have been economically damaged by Defendants' fraudulent conduct with regard to the marketing and sale of the 303 THF Product.

137.    As a direct and proximate result of Defendants' illegal conduct, Plaintiffs and Class Members have suffered ascertainable losses of money and other damages.

138.    Defendants concealed any internal test data and the truth about the 303 THF Product at all relevant times during the class period.  Accordingly, Defendants' misrepresentations and omissions, and the fact of injury to Plaintiffs and the Class, were not reasonably ascertainable until—at the earliest—the State of Missouri's public disclosures in November 2017.

139.    Defendants' conduct as described herein was intentional and/or in reckless disregard for the rights of Plaintiffs and other Class Members.

140.    Defendants' conduct is such that an award of punitive damages against each Defendant is appropriate.

<u>COUNT VII</u>
**(Negligent Misrepresentation)**

141.    Plaintiffs incorporate by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

142.    Defendants made representations regarding their 303 THF Product, as set forth above, including without limitation the representations that the 303 THF Product was fit to be used

in older tractors and other equipment, that the 303 THF Product met or had an equivalency to specifications, and that the 303 THF Products provided certain qualities, results and benefits.

143.    Such representations were made by Defendants with the intent that Plaintiffs and the Class Members rely on such representations in purchasing Defendants' 303 THF Product.

144.    Such representations were material to Plaintiffs' and the Class Members' purchase of Defendants' 303 THF Product.

145.    Such representations were false.

146.    Defendants failed to use ordinary care and were negligent in making and/or allowing to be made the representations set forth above.

147.    Plaintiffs and the Class Members relied on such representations and such reliance was reasonable under the circumstances.

148.    Plaintiffs and Class Members have been economically damaged by Defendants' negligent conduct with regard to the marketing and sale of the 303 THF Product.

149.    Defendants concealed any internal test data and the truth about the 303 THF products at all relevant times during the class period.    Accordingly, Defendants' misrepresentations and omissions, and the fact of injury to Plaintiffs and the Class, were not reasonably ascertainable until—at the earliest—the State of Missouri's public disclosures in November 2017.

150.    As a direct and proximate result of Defendants' negligent conduct, Plaintiffs and Class Members have suffered ascertainable losses of money.

## COUNT VIII
### (Violations of Missouri Merchandising Practices Act)

151.    Plaintiffs incorporate by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

152.     Plaintiffs incorporate by reference all preceding paragraphs of this Class Action Complaint as if fully set forth herein.

153.     Plaintiffs and many Class Members purchased Defendants' 303 THF Product for personal, family, or household purposes.

154.     Plaintiffs are all "person[s]" for purposes of the Missouri Merchandising Practices Act ("MMPA").  Mo. Rev. Stat. § 407.010.

155.     Defendants' 303 THF Product meets the definition of "merchandise" for purposes of the MMPA.  Mo. Rev. Stat. § 407.010.

156.     Defendants' sale of their 303 THF Product is a "sale" within the meaning of the MMPA.  Mo. Rev. Stat. § 407.010.

157.     Defendants engaged in "trade" or "commerce" within the meaning of the MMPA. Mo. Rev. Stat. § 407.010.

158.     Under the MMPA, Defendants have a statutory duty to refrain from deceptive acts and practices.

159.     Pursuant to the MMPA, an unlawful practice is the use of "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . .  in or from the State of Missouri."  Mo. Rev. Stat. § 407.020.

160.     Defendants used and employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice and the concealment, suppression, or omission of material facts in connection with the sale or advertisement of their 303 THF Product in trade or commerce in the State of Missouri, in violation of the MMPA.

161.    Defendants' conduct set forth in paragraphs 7-9, 11-15, 33-47, 58-63, 70, 72-74, 76-79, and elsewhere above, including without limitation the representations that the 303 THF Product was fit to be used in older tractors and other equipment, and that the 303 THF Product met or had an equivalency to specifications, were unfair, deceptive, false and misleading and made knowingly by Defendants or without knowledge as to their truth or falsity and were therefore deceptions, frauds, false pretenses, false promises, and misrepresentations as described at § 407.020 RSMo, and therefore a violation of the MMPA.

162.    Defendants' conduct set forth in paragraphs 7-9, 11-15, 33-47, 58-63, 70, 72-74, 76-79, and elsewhere above, including without limitation the label representations that the 303 THF Product was fit to be used in older tractors and other equipment,  that the 303 THF Product met or had an equivalency to specifications, and Defendants' failure to inform consumers of the true nature of the product and the obsolete specifications, also constituted the omission or suppression of a material fact in violation of § 407.020 RSMo in that Defendants' 303 THF Product was not appropriate for use and did not meet specifications as labeled, advertised, marketed, and sold.

163.    Defendants' conduct as set forth herein with regard to the marketing and sale of the 303 THF Product constitutes unlawful, unfair and/or fraudulent business practices in violation of the MMPA.

164.    Defendants engaged in unlawful practices including deception, false promises, misrepresentation, and/or the concealment, suppression or omission of material facts in connection with the marketing and sale of the 303 THF Product, all in violation of §407.020 RSMo.

165.    Defendants' conduct with regard to their 303 THF Product was materially misleading and deceptive, and was a proximate cause of economic damage to purchasers.

166.    Plaintiffs and Class Members have suffered economic and other damages as a result of Defendants' conduct with regard to the marketing and sale of the 303 THF Product.

167.    As a direct and proximate result of Defendants' illegal conduct, Plaintiffs and Class Members have suffered ascertainable losses of money.

168.    Defendants' conduct as described herein was intentional, done knowingly, in conscious disregard of the rights of Plaintiffs and other Class Members, and in violation of § 407.020 RSMo, and the regulations of the Attorney General of Missouri promulgated thereunder.

169.    Defendants' conduct is such that an award of punitive damages against each Defendant is appropriate.

WHEREFORE, Plaintiffs, on behalf of themselves and the Class described in this Class Action Complaint, respectfully request that:

A.  The Court certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, and adjudge Plaintiffs and counsel to be adequate representatives thereof;

B.  The Court enter an Order requiring each Defendant to pay actual and punitive damages to Plaintiffs and the other Members of the Class;

C.  The Court enter an Order awarding Plaintiffs, individually and on behalf of the other Members of the Class, the expenses and costs of suit, including reasonable attorneys' fees and reimbursement of reasonable expenses, to the extent provided by law;

D.  The Court enter an Order awarding to Plaintiffs, individually and on behalf

of other Members of the Class, pre-and post-judgment interest, to the extent

allowable; and,

E.   For such other and further relief as may be just and proper.


## DEMAND FOR JURY TRIAL

Plaintiffs and Class Members hereby demand a jury trial on all issues of fact and damages

in this action.


Date:  November 5, 2019                    Respectfully submitted,

                                           WHITE, GRAHAM, BUCKLEY,
                                           & CARR, L.L.C

                                           BY:_____ /s/ *Bryan T. White* _____
                                                   Gene P. Graham, Jr.   MO 34950
                                                   William Carr          MO 40091
                                                   Bryan T. White        MO 58805
                                                   19049 East Valley View Parkway
                                                   Independence, Missouri 64055
                                                   (816) 373-9080 Fax: (816) 373-9319
                                                   ggraham@wagblaw.com
                                                   bwhite@wagblaw.com

                                           HORN AYLWARD & BANDY, LLC

                                           BY:___ */s/ Thomas V. Bender* _____
                                                   Thomas V. Bender      MO 28099
                                                   Dirk Hubbard          MO 37936
                                                   2600 Grand, Ste. 1100
                                                   Kansas City, MO 64108

(816) 421-0700
(816) 421-0899 (Fax)
tbender@hab-law.com
dhubbard@hab-law.com

CLAYTON JONES, ATTORNEY AT LAW

BY:_____/s/ *Clayton A. Jones*_____
Clayton Jones        MO 51802
P.O. Box 257
405 W. 58 Hwy.
Raymore, MO 64083
Office: (816) 318-4266
Fax: (816) 318-4267
claytonjoneslaw.com

**ATTORNEYS FOR PLAINTIFFS
AND CLASS MEMBERS**