IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| ARNO GRAVES et al., on behalf of themselves and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Case No. 3:19-cv-05089-SRB |
| CAM2 INTERNATIONAL LLC, SMITTY'S SUPPLY, INC., ATWOOD DISTRIBUTING, L.P., and TRACTOR SUPPLY COMPANY, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## **ORDER**

Before the Court is Defendants Smitty's Supply Inc. ("Smitty's"), CAM2 International, LLC ("CAM2"), and Tractor Supply Company's ("Tractor Supply") (collectively, "Defendants") Motion to Dismiss. (Doc. #14).[1] For the reasons stated below, the motion is GRANTED in part and DENIED in part.

---

[1] After the instant motion to dismiss was filed, on April 6, 2020, Plaintiffs filed an unopposed motion for leave to file a Second Amended Class Action Complaint, which this Court granted. (Doc. #51.) On June 1, 2020, Plaintiffs filed an unopposed motion for leave to file a Third Amended Class Action Complaint. (Doc. #73.) The next day, the U.S. Judicial Panel on Multidistrict Litigation ("J.P.M.L.") issued a decision consolidating and transferring eight related actions, including this case, to the U.S. District Court for the Western District of Missouri for centralized proceedings before this Court. *See In re: Smitty's/CAM2 303 Tractor Hydraulic Fluid Mktg., Sales Practices & Prod. Liab. Litig.*, No. 2936, 2020 WL 2848377, at *2 (J.M.P.L. June 2, 2020). After consolidation, this Court granted Plaintiffs' unopposed motion for leave to file a Third Amended Class Action Complaint. (Doc. #75.) Ordinarily, when leave to amend a complaint is granted, all pending motions related to the earlier complaint are denied as moot. *Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002). Since Defendants consented to Plaintiffs' motions to amend and the third amended complaint does not substantively change the factual allegations or legal theories that form the basis of Plaintiffs' claims, the Court considers Defendants' arguments in their pending motion to dismiss as applied to the third amended complaint. *See, e.g.*, *Cartier v. Wells Fargo Bank, N.A.*, 547 F. App'x 800, 804 (8th Cir. 2013); *Brooks v. Am. Family Mut. Ins. Co.*, No. 2:14-CV-04171-NKL, 2014 WL 5343776, at *2 (W.D. Mo. Oct. 20, 2014).

I. **BACKGROUND**

This dispute arises from the manufacture, sale, and marketing of tractor hydraulic fluid ("THF"). THF is a multifunctional lubricant product, designed to offer certain protective and anti-wear benefits, used in tractors and heavy equipment as a hydraulic fluid, transmission fluid, and gear oil. In the 1960s, John Deere (of Deere & Company) began manufacturing and selling a THF product called JD-303, commonly known as "303." Soon other manufacturers began to produce similar, economically priced THF products. John Deere's original JD-303 product used sperm whale oil as an ingredient, but after federal laws banning the use of sperm whale oil were passed in the 1970s, John Deere stopped selling JD-303 and formulated a new THF product. The other THF manufacturers similarly abandoned sperm whale oil as an ingredient but continued to market their economical THF products using the "303" term. This action relates to the continued use of the "303" term and whether the defendant manufacturers or retailers in this case designed, produced, and/or sold misleading, obsolete, or substandard THF products.

Defendants Smitty's and CAM2 are both manufacturers that produce and sell various 303 THF products to retailers in multiple states. At issue in this case are four specific THF products: (1) Smitty's Super S SuperTrac 303 THF ("Smitty's SuperTrac 303"); (2) Smitty's Super S 303 THF ("Smitty's Super S 303"); (3) CAM2's ProMax 303 Tractor Hydraulic Oil ("CAM2 ProMax 303"); and (4) CAM2's 303 Tractor Hydraulic Oil ("CAM2 303") (collectively, the "303 THF Products"). Defendant Tractor Supply is a retailer that markets and sells some of the 303 THF Products.[2] The thirteen named Plaintiffs are consumers who purchased a 303 THF Product manufactured by Smitty's and/or CAM2 and sold by retailers Tractor Supply and/or

---

[2] Defendant Atwood Distributing LP ("Atwood") is also a retailer that sold some of the 303 THF products at issue in this case. While Atwood is a party to this action, as of the date of this Order it has not joined the instant motion to dismiss.

Atwood. Plaintiffs bring this class action suit pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves, a multi-state class of other similarly situated consumers, and nine state-specific subclasses. The parties agree this Court has federal jurisdiction over this case pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

In their third amended complaint, Plaintiffs assert Counts I–VI on behalf on themselves and the multi-state class: (1) Count I: Negligence; (2) Count II: Breach of Express Warranty; (3) Count III: Breach of Implied Warranty of Merchantability; (4) Count IV: Breach of Implied Warranty for Fitness for Particular Purpose; (5) Count 5: Unjust Enrichment; (6) Count VI: Fraud/Misrepresentation; and (7) Count VII: Negligence Misrepresentation. In addition to the claims raised in Counts I–VII, the below named Plaintiffs assert the following claims on behalf of themselves and a specific state subclass:

- (8) Count VIII: Violation of Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.010 *et seq.* (asserted by Plaintiffs Graves, Nash, and Vilela on behalf of themselves and the Missouri Subclass:);

- (9) Count IX: Violation of Nebraska Consumer Protection Act ("NCPA"), Neb. Rev. St. §§ 59-1601 *et seq.* (asserted by Plaintiff Simpson on behalf of himself and the Nebraska Subclass);

- (10) Count X: Violation of Nebraska's Uniform Deceptive Trade Practices Act ("Neb. DTPA"), Neb. Rev. St. §§ 87-301 *et seq.* (asserted by Plaintiff Simpson on behalf of himself and the Nebraska Subclass);

- (11) Count XI: Violation of Ohio Consumer Sales Practices Act ("OCSPA"), R.C. §§ 1345.01 *et seq.* (asserted by Plaintiffs Hayes and Ortner on behalf of themselves and the Ohio Subclass);

- (12) Count XII: Violation of Oklahoma Consumer Protection Statute[s] (asserted by Plaintiffs Graves and Nash on behalf of themselves and the Oklahoma Subclass);

- (13) Count XIII: Violation of South Dakota Consumer Protection Statute[s] (asserted by Plaintiff Gisi on behalf of himself and the South Dakota Subclass);

- (14) Count XIV: Violation of West Virginia Consumer Protection Statute (asserted by Plaintiffs Bias and Curry on behalf of themselves and the West Virginia Subclass).

None of the thirteen named Plaintiffs are Missouri residents, and only three (Plaintiffs Graves, Nash, and Vilela) allege they purchased a 303 THF Product in Missouri.[3]

Pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendants seek dismissal of all claims against Smitty's and Tractor Supply by Plaintiffs due to lack of personal jurisdiction, as well as dismissal of all claims asserted against Smitty's, CAM2, and Tractor Supply by Plaintiffs Bias, Curry, Gisi, Hayes, James, Nelms, Ortner, the Shaws, and Simpson. Defendants also argue that any claims related to the sale of Smitty's 303 THF in the state of Missouri are barred by the prior settlement of a class-action lawsuit in *Hornbeck v. Smitty's Supply, Inc.*, No. 4:18-CV-00523-NKL, and should be dismissed pursuant to Rule 12(b)(6). Defendants also seek dismissal of Plaintiff Vilela's causes of action under the doctrine of claim-splitting.

## II. LEGAL STANDARD

### A. Rule 12(b)(2): Lack of Personal Jurisdiction

Before considering the merits of a claim, a court must first determine that it possesses personal jurisdiction over the defendants. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) (noting "a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit . . . and the parties"). "When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816,

---

[3] Named Plaintiffs and their respective state of residence are as follows: Arno Graves (Oklahoma); Ron Nash (Kansas); Roger Bias (West Virginia); Clinton Curry (West Virginia); Patrick Gisi (South Dakota); Brian Hayes (Ohio); William James (Tennessee); Bryan Nelms (Alabama); Matt Ortner (Ohio); Anthony Shaw (Georgia) and Rusty Shaw (Georgia) (collectively, the "Shaws"); Jay Simpson (Nebraska); and Randy Vilela (Kansas). (Doc. #77, ¶¶ 19–32.)

820 (8th Cir. 2014) (citing *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d at 591–92 (8th Cir. 2011)). To survive a motion to dismiss challenging personal jurisdiction, the plaintiff must plead "sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (quoting *K-V Pharm. Co.*, 648 F.3d at 591–92); *see also Fastpath, Inc.*, 760 F.3d at 820 (to survive dismissal under Rule 12(b)(2), "a plaintiff must make a prima facie showing of personal jurisdiction over the challenging defendant"). The Court "must view the evidence in the light most favorable to the plaintiff and resolve all factual conflicts in its favor in deciding whether the plaintiff made the requisite showing." *K-V Pharm. Co.*, 648 F.3d at 592.

"Personal jurisdiction over a defendant represents the power of a court to enter a valid judgment imposing a personal obligation or duty in favor of the plaintiff." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 592–93 (8th Cir. 2011) (citation omitted). "Personal jurisdiction can be specific or general." *Id.* at 593. Specific, or case-linked, personal jurisdiction over a defendant exists when a plaintiff's claim arises from or relates to the defendant's purposeful contacts with the forum state. *Creative Calling Sols., Inc.*, 799 F.3d at 979–80 (citing *Daimler AG v. Bauman,* 571 U.S. 117, 127 (2014)). In contrast, general personal jurisdiction over a defendant exists when that defendant's contacts with the forum State "are so continuous and systematic as to render [the defendant] essentially at home" in that state, regardless of how the plaintiff's claim arose. *Daimler*, 571 U.S. at 127, 136–39 (holding that an individual's domicile and a corporation's place of incorporation and principal place of business are "paradigm" bases for general personal jurisdiction). "Both theories of personal jurisdiction require 'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Dever*

5

v. *Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)). A federal court sitting in diversity may exercise specific jurisdiction over a nonresident defendant "only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." *Dever*, 380 F.3d at 1073.

### B. Rule 12(b)(6): Failure to State a Claim Upon Which Relief May Be Granted

Under Rule 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (internal citation quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678). Rule 12(b)(6) also permits dismissal of a claim that lacks a cognizable legal theory or where the law provides no relief. *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (dismissal appropriate if "plaintiff can prove no set of facts in support of a claim entitling him to relief").

### III. DISCUSSION

#### A. Personal Jurisdiction

All parties agree this Court cannot exercise general personal jurisdiction over Defendants. Defendants argue this Court lacks specific personal jurisdiction over any claims asserted against Smitty's and Tractor Supply by the multi-state class, state subclasses, or any individual named plaintiffs. Defendants also argue this Court lacks personal jurisdiction over CAM2 regarding

any individual claims asserted by the ten named Plaintiffs who purchased a 303 THF Product outside Missouri (Plaintiffs Bias, Curry, Gisi, Hayes, James, Nelms, Ortner, the Shaws, and Simpson) or the claims asserted by the nine state subclasses. Each argument is addressed below.

"The reach of a state's long-arm statute is a matter of state law, and 'federal courts are required to accept the interpretation given the statute by the state supreme court [.]'" *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 909 (8th Cir. 2012) (quoting *Mountaire Feeds, Inc. v. Agro Impex, S.A.*, 677 F.2d 651, 653 (8th Cir. 1982)). Under Missouri law, when considering whether specific personal jurisdiction exists over a nonresident defendant a court must first determine if the defendant's conduct falls within a category enumerated in Missouri's long-arm statute. *State ex rel PPG Indus., Inc. v. McShane*, 560 S.W.3d 888, 891 (Mo. banc 2018). Missouri's long-arm statute states in relevant part:

> 1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:
>
> (1) The transaction of any business within this state;
> …
> (3) The commission of a tortious act within the state[.]

Mo. Rev. Stat. § 506.500(1), (3). "Missouri courts construe 'transaction of business' broadly" and "a person or firm transacts business by visiting Missouri or sending its product or advertising here." *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 476 (8th Cir. 2012) (citations omitted). Further, "Missouri courts have interpreted the 'tortious act' prong to include '[e]xtraterritorial acts that produce consequences in the state.'" *Smith v. Truman Rd. Dev., LLC*, 414 F. Supp. 3d 1205, 1215–16 (W.D. Mo. 2019) (quoting *Bryant v. Smith Interior Design Grp., Inc.*, 310 S.W.3d 227, 232 (Mo. banc 2010)). These categories have been broadly construed "such that if a defendant commits one of the acts specified in the long-arm statute, the

statute will be interpreted 'to provide for jurisdiction . . . to the full extent permitted by the Due Process Clause.'" *Truman Rd. Dev.*, 414 F. Supp. 3d at 1215–16 (quoting *Viasystems, Inc.*, 646 F.3d at 593).

### 1. Multi-state Class Action Claims

Plaintiffs seek certification of a multi-state class of all persons or entities that purchased a 303 THF Product sold and/or manufactured by Defendants in forty-one states during the relevant class period, absent certain exclusions.[4] Three of the thirteen named Plaintiffs (Plaintiffs Graves, Nash, and Vilela, the "Missouri Purchasing Plaintiffs") bought a 303 THF Product in Missouri. The remaining ten named Plaintiffs (Plaintiffs Bias, Curry, Gisi, Hayes, James, Nelms, Ortner, the Shaws, and Simpson, the "Non-Missouri Purchasing Plaintiffs") bought a 303 THF Product outside of Missouri.

### a. Defendant Smitty's Supply, Inc.

Smitty's argues this Court lacks personal jurisdiction over the multi-state class claims against it because the 303 THF Products bought by the Missouri Purchasing Plaintiffs were marketed and sold by CAM2 and Atwoods, not Smitty's. Smitty's contends that CAM2's actions cannot be imputed onto Smitty's to establish personal jurisdiction and argue that Smitty's itself did not commit a tortious act within Missouri under Mo. Rev. Stat. § 506.500(3). Plaintiffs disagree, arguing Smitty's manufactured a defective THF product and sold that defective product under four different label names—Smitty's Supertrac 303, Smitty's Super S 303, CAM2 ProMax 303, and CAM2 303. Plaintiffs contend that Smitty's could reasonably foresee that its negligent

---

[4] The multi-state class specifically excludes any persons or entities who purchased a 303 THF Product in any of the other states where related suits against Defendants are pending (Arkansas, California, Iowa, Kansas, Kentucky, Louisiana, Minnesota, and Texas), as well as any Smitty's Super S Supertrac 303 THF purchases made in Missouri.

manufacture and sale of the defective 303 THF Products would have consequences in Missouri, where the Missouri Purchasing Plaintiffs bought Smitty's defective products.

### i. Personal Jurisdiction Under Missouri's Long-Arm Statute

Taking Plaintiffs' factual allegations as true and drawing all reasonable inferences in their favor, the Court determines Plaintiffs sufficiently demonstrate the commission of a tortious act in Missouri which may subject Smitty's to personal jurisdiction under Missouri's long-arm statute. Plaintiff alleges that Smitty's manufactured all 303 THF Products at issue in this case, including the CAM2 ProMax 303 and CAM2 303 THF products the Missouri Purchasing Plaintiffs bought in Missouri. Plaintiffs allege Smitty's knew the 303 THF Products it manufactured contained used and substandard oil byproducts not fit for consumer use, yet still falsely and deceptively labeled those products and were unjustly enriched by the sale of those products to unwitting consumers across the country, including in Missouri where the Missouri Purchasing Plaintiffs bought the 303 THF Products that caused their alleged injuries. Smitty's does not dispute that it manufactured the 303 THF Products at issue, that those products were sold in the state of Missouri, or that consequences of its allegedly defective products were felt in Missouri. Courts have found similar extraterritorial acts which produce reasonably foreseeable consequences in Missouri to fall within the purview of Missouri's long-arm statute and authorize personal jurisdiction over a defendant. *See Casino Queen, Inc.*, 689 F.3d at 911 ("If a defendant can reasonably foresee [its] negligent actions having consequences felt in Missouri, jurisdiction is authorized."); *Bryant*, 310 S.W.3d at 232 ("[e]xtraterritorial acts that produce consequences in the state, such as fraud, are subsumed under the tortious act section of the long-arm statute.") (citation omitted). Plaintiffs thus put forth a *prima facie* case showing that Smitty's alleged

conduct gives rise to the claims asserted by the Missouri Purchasing Plaintiffs and the multi-state class pursuant to Missouri's long-arm statute.

### ii. Personal Jurisdiction Authorized by Due Process

Since the Court finds that Missouri's long-arm statute authorizes the exercise of personal jurisdiction over Smitty's, the next inquiry is whether the assertion of personal jurisdiction would violate Due Process. *See Truman Rd. Dev.*, 414 F. Supp. 3d at 1215–16 (citing *Aly v. Hanzada for Imp. & Exp. Co., LTD*, 864 F.3d 844, 849 (8th Cir. 2017)). Due process requires a defendant have "sufficient minimum contacts" with the forum state so as not to "offend traditional notions of fair play and substantial justice." *Whaley v. Esebag*, 946 F.3d 447, 451 (8th Cir. 2020). For a specific jurisdiction analysis, personal jurisdiction is proper "only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities." *Johnson v. Arden*, 614 F.3d 785, 795 (8th Cir. 2010) (citing *Steinbuch v. Cutler*, 518 F.3d 580, 586 (8th Cir. 2008)). "In determining whether a nonresident defendant's contacts with Missouri are sufficient to subject it to personal jurisdiction, the Court considers five factors, the first three of which are the most important: '(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties.'" *Truman Rd. Dev.*, 414 F. Supp. 3d at 1216 (quoting *Arden*, 614 F.3d at 794). A court looks at all of these factors and examines the totality of the circumstances. *Arden*, 614 F.3d at 794.

Smitty's argues there is an insufficient link between its contacts with Missouri and the claims asserted by Missouri Purchasing Plaintiffs on behalf of themselves and the multi-state

class.  Specifically, Smitty's argues CAM2 is the party which sold and marketed the 303 THF Products purchased by Missouri Purchasing Plaintiffs and that "another party or person's actions do not satisfy the due process requirements in the specific jurisdiction analysis."  (Doc. #39, p. 4.)  Plaintiffs, in addition to noting the close business relationship between Smitty's and CAM2, emphasize that the 303 THF Products bought by the Missouri Purchasing Plaintiffs were all manufactured by Smitty's, purchased from retail stores in Missouri, and that those purchases give rise to the Missouri Purchasing Plaintiffs' claims.

Applied here, the factors weigh in favor of establishing Smitty's minimum contacts with Missouri.  Regarding the nature, quality, and quantity of Smitty's various contacts with Missouri, Plaintiffs allege that Smitty's is the common manufacturer of all the 303 THF Products at issue in this case, including the products that were shipped to Missouri and purchased by the Missouri Purchasing Plaintiffs in Missouri.  Plaintiffs also allege that Smitty's made the formulation and labeling decisions for the 303 THF Products, labels that Plaintiffs allege falsely and deceptively advertised the protective benefits of the 303 THD Products to consumers in Missouri.  Further, Plaintiffs allege Smitty's was unjustly enriched by the sale of its negligently manufactured and deceptively marketed 303 THF Products in Missouri.  While Smitty's contends that CAM2 is the party which directly sold to retailers the 303 THF Products bought by the Missouri Purchasing Plaintiffs, Plaintiffs allege Smitty's and CAM2 share a common corporate management and/or ownership structure such that Smitty's either knew or could reasonably foresee that the 303 THF Products it manufactured for CAM2 would be distributed to retail stores located in Missouri and purchased by Missouri consumers.[5]  *See Truman Rd. Dev.*, 414 F. Supp. 3d at 1216 (internal

---

[5] The precise nature of the corporate relationship between Smitty's and CAM2 is disputed.  Plaintiffs allege Smitty's owns CAM2, which is described as an operating division within Smitty's. (Doc. #26, p. 26.)  Defendants refute that assertion by submitting affidavits from executive officers of each respective company which simply state neither company owns the other.  (Doc. #15-1; Doc. #15-2.)  While this Court

citations, quotation marks, and alterations omitted) ("Although each defendant's contacts with the forum State must be assessed individually, naturally, the parties' relationships with each other may be significant in evaluating their ties to the forum."). In sum, Plaintiffs put forth a sufficient factual basis about the nature, quality, and quantity of Smitty's contacts with Missouri and their relation to Missouri Purchasing Plaintiffs' claims to demonstrate Smitty's "purposely availed itself to the benefits and protections" of Missouri. *See Viasystems, Inc.*, 646 F.3d at 594 (citations and quotation marks omitted). Additionally, the last two jurisdictional factors, which carry less weight in the specific jurisdiction analysis and are not dispositive, *see Whaley*, 946 F.3d at 452, do not weigh against finding personal jurisdiction over Smitty's.

Smitty's argues in their reply brief that Plaintiffs' stream-of-commerce theory has been "expressly rejected" twice by the U.S. Supreme Court for establishing specific jurisdiction over a defendant. (Doc. #39, p. 5) (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 875–85 (2011) and *Walden v. Fiore*, 571 U.S. 277, 290 (2014)). However, neither *Nicastro* nor *Walden* disavow the use of the stream-of-commerce theory to establish personal jurisdiction. In both cases, the U.S. Supreme Court stated the relevant jurisdictional inquiry is whether a defendant's conduct is connected to the forum state in a meaningful way.[6] *See Nicastro*, 563 U.S. at 884 ("The question is whether a defendant has followed a course of conduct directed at the society or

---

must view the facts and draw all reasonable inferences in Plaintiffs' favor at this stage, whether or not Smitty's owns CAM2 (or vice versa) need not be decided at this stage of the proceeding to determine if personal jurisdiction exists over Smitty's.

[6] Defendants' argument also relies, in part, on the U.S. Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*, 137 S.Ct. 1173 (2017), which reversed a California Supreme Court ruling that California courts could exercise specific jurisdiction over claims raised by nonresident plaintiffs in a mass-tort action. Defendants note that one appellate court, the Court of Appeals for the Third Circuit, has ceased applying the stream-of-commerce theory since *Bristol-Myers* was decided. *See generally Shuker v. Smith & Nephew*, 885 F.3d 760, 780 (3d Cir. 2018). As this Court has noted before, the Eighth Circuit has not ruled on the applicability of *Bristol-Myers* in a class action context. *See Harrison v. Gen. Motors Co.*, No. 17-3128-CV-S-SRB, 2018 WL 6706697, at *7 (W.D. Mo. Dec. 20, 2018) (Bough, J.). This Court again declines to extend *Bristol-Myers* to federal class actions at this time.

economy existing within the jurisdiction of a given sovereign, so that the sovereign has the power to subject the defendant to judgment concerning that conduct."); *Walden*, 571 U.S. at 290 ("[M]ere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State."). Plaintiffs here present more than the "mere injury" of the Missouri Purchasing Plaintiffs. Taken together, the factual allegations of this case and the reasonable inferences drawn from them show Smitty's contacts with Missouri are not premised solely on actions taken by CAM2, nor are they so "random," "attenuated," or "fortuitous" that Smitty's cannot fairly be subjected to suit in Missouri for the claims asserted by Missouri Purchasing Plaintiffs. *See K-V Pharm. Co.*, 648 F.3d at 596; *cf. Viasystems, Inc.*, 646 F.3d at 594 ("isolated" and "sporadic" connections to a forum state are "the sort of random, fortuitous, and attenuated contacts that cannot justify the exercise of personal jurisdiction"). In turn, personal jurisdiction over Smitty's for the Missouri Purchasing Plaintiffs' individual and multi-state class claims is proper.

### b. Defendant Tractor Supply Co.

Tractor Supply also argues this Court lacks personal jurisdiction over the multi-state class claims asserted against it. Tractor Supply largely repeats Smitty's earlier jurisdictional arguments, emphasizing that Tractor Supply has insufficient connections to Missouri because it "did not manufacture, design, produce or market CAM2 products in Missouri." (Doc. #39, p. 8.) Plaintiffs disagree, noting that Tractor Supply admits it previously sold at least thirty-eight units of the CAM2 303 THF product in Missouri, one of the 303 THF Products at issue in this case giving rise to the claims asserted by the multi-state class and one of the Missouri Purchasing Plaintiffs.

13

Case 3:19-cv-05089-SRB   Document 88   Filed 07/13/20   Page 13 of 19

The Court finds Plaintiffs have put forth a *prima facie* case showing Tractor Supply is subject to personal jurisdiction in Missouri for claims asserted by Missouri Purchasing Plaintiffs and the multi-state class under Missouri's long-arm statute and the Due Process Clause. Tractor Supply does not dispute that it operates retail stores throughout Missouri or that it advertised and sold to Missouri consumers some of the 303 THF Products at issue in this case. Such actions fall well within the scope of Missouri's long-arm statute. *See generally* Mo. Rev. Stat. § 506.500(1). Those facts also support finding that Tractor Supply has sufficient minimum contacts with the state of Missouri to satisfy Due Process requirements under the relevant Eighth Circuit factors. *See Arden*, 614 F.3d at 795.

Tractor Supply emphasizes that its "inadvertent" sale of thirty-eight units of a 303 THF Product during the class period is a "*de minimus* contact" insufficient to authorize personal jurisdiction in this case. (Doc. #39, p. 8.) However, whether the exercise of personal jurisdiction comports with Due Process is considered based on the totality of circumstances. *See Arden*, 614 F.3d at 794. Given Tractor Supply's sizable physical retail presence in Missouri, its significant and ongoing sales and business operations in the state, and the allegation that one of the Missouri Purchasing Plaintiffs bought a defective 303 THF Product from a Tractor Supply store located in Missouri, Plaintiffs satisfy their burden in this case. Taken as true, Plaintiffs' allegations and all the reasonable inferences drawn from them show the nature, quality, and quantity of Tractor Supply's contacts with Missouri, and the relationship of those contacts to the claims raised by the Missouri Purchasing Plaintiffs, support finding Tractor Supply has purposely availed itself to the benefits and protections of doing business in Missouri and can reasonably expect to be sued in this forum for the claims asserted in this case. *See Viasystems, Inc.*, 646 F.3d at 594. Lastly, the two remaining jurisdictional factors, while not dispositive, do not weigh against finding personal

jurisdiction over Tractor Supply. *See Whaley*, 946 F.3d at 452. In turn, personal jurisdiction over Tractor Supply for the Missouri Purchasing Plaintiffs' individual and multi-state class claims is proper.

### 2. Non-Missouri Purchasing Plaintiffs' Individual & State Subclass Claims

In addition to the multi-state class, Plaintiffs seek certification of nine state subclasses on behalf of all persons or entities in a particular state who purchased a 303 THF Product during the relevant class period. One of those state subclasses is a Missouri subclass (the "Missouri State Subclass") represented by the three Missouri Purchasing Plaintiffs. The other state subclasses and their putative class members—located in Alabama, Georgia, Nebraska, Ohio, Oklahoma, South Dakota, Tennessee, and West Virginia—are represented by the Non-Missouri Purchasing Plaintiff who is a resident of, and purchased a 303 THF Product from, that given state.

#### a. Missouri State Subclass Claims

Missouri Purchasing Plaintiffs assert Counts I–VIII on behalf of themselves and the Missouri State Subclass, which includes all persons or entities who purchased CAM2 ProMax 303 THF during the relevant class period. In their motion to dismiss, Defendants seek dismissal of all subclass claims asserted by the named Plaintiffs. Plaintiffs argue that because personal jurisdiction over Smitty's, CAM2, and Tractor Supply has been established for the multi-state class claims, it is appropriate for this Court to also exercise personal jurisdiction over the claims asserted by the Missouri Purchasing Plaintiffs on behalf of the Missouri subclass. In their reply, Defendants do not dispute that CAM2 is subject to personal jurisdiction, but repeat their earlier arguments regarding the insufficient contacts between Smitty's, Tractor Supply, and Missouri.

For the same reasons discussed previously, Plaintiffs have established their *prima facie* case that this Court may exercise personal jurisdiction over the Missouri Purchasing Plaintiffs'

15

claims against Smitty's, CAM2, and Tractor Supply. Accordingly, this Court also may exercise personal jurisdiction over the claims asserted by the Missouri Purchasing Plaintiffs on behalf of the Missouri State Subclass and denies Defendants' motion to dismiss those claims.

### b. Non-Missouri Purchasing Plaintiffs' Individual & Respective State Subclass Claims

Each of the ten Non-Missouri Purchasing Plaintiffs assert Counts I–VII on behalf of themselves and the respective state subclass they represent.[7] Defendants seek dismissal of all individual and state subclass claims raised by the Non-Missouri Purchasing Plaintiffs, arguing this Court lacks personal jurisdiction because all their claims rely on conduct which took place outside Missouri. Plaintiffs do not argue the claims asserted by the Non-Missouri Purchasing Plaintiffs arise from Smitty's, CAM2's, or Tractor Supply's contacts with Missouri. Instead, Plaintiffs urge this Court to exercise pendant personal jurisdiction over both the individual and respective state subclass claims raised by Non-Missouri Purchasing Defendants until the class certification stage, stating this approach would serve the interests of judicial economy.

The Court agrees with Defendants and finds that this Court lacks the authority to exercise personal jurisdiction over the individual and respective state subclass claims asserted by the ten Non-Missouri Purchasing Plaintiffs. When assessing personal jurisdiction, a district court asks if the plaintiff's cause of action arises from or relates to the defendant's contacts with the forum state. *See generally Creative Calling Sols., Inc.*, 799 F.3d at 979 (citation omitted). Here, the facts do not show the requisite connection between the actions of Defendants in Missouri and the alleged harms suffered by the Non-Missouri Purchasing Plaintiffs under the Missouri long-arm

---

[7] In addition to Counts I–VII, Plaintiff Simpson asserts Counts IX–X on behalf of himself and the Nebraska subclass, Plaintiffs Hayes and Ortner assert Count XI on behalf of themselves and the Ohio subclass, Plaintiff Gisi asserts Count XIII on behalf of himself and the South Dakota subclass, and Plaintiffs Bias and Curry assert Count XIV on behalf of themselves and the West Virginia subclass.

statute or the Due Process Clause. The Court declines to permit Plaintiffs to bypass their burden to establish jurisdiction by exercising pendant personal jurisdiction, particularly since Plaintiffs' concerns about judicial economy have been largely resolved by consolidated MDL proceedings for this and other related cases.

In sum, Defendants' motion to dismiss all individual and multi-state claims raised against Smitty's, CAM2, and Tractor Supply due to lack of personal jurisdiction is denied, and dismissal without prejudice of the individual and state consumer statute subclass claims by the following named plaintiffs is granted: Bias, Curry, Gisi, James, Nelms, Ortner, the Shaws, and Simpson.

### B. Failure to State a Claim Upon Which Relief May Be Granted

Defendants assert two arguments for why Plaintiffs' claims should be dismissed pursuant to Rule 12(b)(6). First, Defendants argue Plaintiffs lack standing to bring a class action against Smitty's or Tractor Supply for the manufacture, marketing, labeling, or sale of Smitty's THF in Missouri due to a prior settlement agreement reached in *Hornbeck v. Tractor Supply Co.*, No. 4:18-cv-00523-NKL. Second, Defendants argue that Plaintiff Vilela's claims are barred by the doctrine of claim-splitting. Each argument is addressed in turn below.

#### 1. Effect of Settlement in *Hornbeck v. Tractor Supply Co.* on Instant Case

Defendants ask this Court to take judicial notice of the settlement agreement reached in the *Hornbeck v. Tractor Supply Co.* case, which Defendants argue bars Plaintiffs from bringing suit against both Smitty's and Tractor Supply for the sale or production of Smitty's Super S 303 THF and Smitty's S 303 THF in the state of Missouri. Plaintiffs disagree, stating Defendants are misstating the breadth and scope of the settlement agreement reached in *Hornbeck*, which was limited to individuals and entities who purchased Smitty's Super S Super Trac 303 THF in the state of Missouri during the relevant class period identified in *Hornbeck*.

After reviewing the relevant language of the *Hornbeck* settlement agreement (Doc. #26-17), the Court finds that agreement does not deprive Plaintiffs of standing for the claims they now assert against Smitty's or Tractor Supply in the instant case. The *Hornbeck* Settlement Agreement and Release expressly states that the agreement applies to claims arising out of or relating to "the purchase of Super Trac 303 Tractor Hydraulic Fluid in Missouri." (Doc. #26-17, p. 4.) Further, the Settlement Class certified in the Preliminary Approval Order issued in the *Hornbeck* case encompasses "[a]ll persons and other entities who purchased Super S Super Trac 303 Tractor Hydraulic Fluid in Missouri." (Doc. #26-16, p. 2.) In turn, *Hornbeck* does not bar Plaintiffs from pursuing causes of action relating to the sale of the 303 THF Products outside the state of Missouri, nor does *Hornbeck* bar any claims arising from the manufacture or sale of any CAM2 THF Products (CAM2 ProMax 303 or CAM2 303) in the state of Missouri.

At this stage of the proceeding, Plaintiffs sufficiently demonstrate the claims resolved in *Hornbeck* have been excluded from the instant case and Defendants' motion to dismiss due to failure to state a claim upon which relief may be granted is thus denied.

### 2. Plaintiff Vilela's Individual Claims and Doctrine of Claim Splitting

Defendants ask the Court to either dismiss the Count I–VII claims asserted by Plaintiff Vilela or transfer his claims to the District of Kansas, where Vilela is also a plaintiff in a related action, *Zornes v. Smitty's Supply Inc.*, No. 2:19-cv-02258-JAR-TJJ. Defendants contend Vilela is prohibited from parsing out his claims against Defendants in multiple suits that arise from the same controversy under the doctrine of claim-splitting. Plaintiffs disagree, arguing that Plaintiff Vilela purchased a defective 303 THF Product in both Missouri and in Kansas and that, in the *Zornes* action, Vilela solely seeks relief for his Kansas purchases, whereas in the instant action his claims relate to purchases he made in Missouri.

Following the issuance of the J.P.M.L.'s transfer order and the subsequent consolidation of all related case proceedings before this Court, the parties jointly filed a discovery plan and status update in which Plaintiffs noted that Plaintiff Vilela had previously been dismissed as a class representative from the *Zornes* case prior to transfer. *In re: Smitty's/CAM2 303 Tractor Hydraulic Fluid Mktg., Sales Practices, and Prod. Liab. Litig.*, No. 4:20-MD-02936-SRB (Doc. #20, p. 25.) Defendants did not discuss or address the effect of Vilela's dismissal as a named class representative from the *Zornes* case on their instant motion to dismiss, either in the joint discovery plan or during the teleconferences and in-person hearings held by this Court since consolidation. Given the dismissal of Plaintiff Vilela's individual claims against Defendants in the *Zornes* case, Defendants' motion to dismiss Plaintiff Vilela's individual claims in the instant case pursuant to the doctrine of claim-splitting is denied as moot.

## IV. CONCLUSION

Accordingly, it is hereby **ORDERED** that Defendants' Motion to Dismiss (Doc. #14) is GRANTED IN PART and DENIED IN PART. The individual and state consumer statute subclass claims asserted by Plaintiffs Bias, Curry, Gisi, James, Nelms, Ortner, Anthony and Rusty Shaw, and Simpson are dismissed without prejudice due to lack of personal jurisdiction. All other claims survive dismissal.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough

STEPHEN R. BOUGH, JUDGE
UNITED STATES DISTRICT JUDGE

DATED: July 13, 2020